**GENTEX CORPORATION,**
**Plaintiff–Appellant,**

v.

**DONNELLY CORPORATION,**
**Defendant–Appellee.**

No. 94–1252.

United States Court of Appeals,
Federal Circuit.

Nov. 3, 1995.

Rehearing Denied Dec. 18, 1995.

---

**528**

John O. Tramontine, Fish & Neave, New York City, argued for plaintiff-appellant. With him on the brief were Ron E. Shulman, David A. Loewenstein, William J. McCabe and Gerald J. Flattmann.

Nicholas Groombridge, Fitzpatrick, Cella, Harper, & Scinto, New York City, argued for defendant-appellee. With him on the brief were John A. O'Brien and Frederick M. Zullow. Also on the brief was Grant J. Gruel and Thomas R. Behm, Gruel, Mills, Nims & Pylman, of Grand Rapids, Michigan.

Before ARCHER, Chief Judge, RICH, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

In this patent infringement suit, the plaintiff, Gentex Corporation, appeals the March 21, 1994 Order and Judgment of the United States District Court for the Western District of Michigan Southern Division, *Gentex Corp. v. Donnelly Corp.*, 31 USPQ2d 1189, 1994 WL 481637 (1994) granting the motion of defendant Donnelly Corporation for a summary judgment of noninfringement of Gentex's U.S. Patent No. 5,128,799 ('799 patent) for "Variable Reflectance Motor Vehicle Mirror." We affirm.

## BACKGROUND

The '799 patent relates to certain aspects of automobile rear view mirrors of a known type which change their reflectance in response to glare from behind the vehicle at night so as to reduce the amount of light reaching the driver's eyes. An element of the device through which the light must pass in going to and returning from the mirrored surface is a solution, held in a thin compartment between two pieces of glass, which changes color, from clear to dark, in response to a low-voltage electric current and known as an "electrochromic" or "electrochemichromic" element. One aspect of these devices is that after they have darkened by application of a current of, for example, 1.2 volts, they are "self-erasing," meaning that they return to a clear condition after removal or discontinuance of the current. The current may come from sensing devices which measure the amount of light impinging on the device. The current is applied to the solution by coating the surfaces of the glass with which it is in contact with transparent conducting material serving as electrodes.

The parties to this suit are competitors in the manufacture and sale of the aforesaid variable reflectance mirrors and appurtenant to that competition there have been several other suits between them including one for infringement by Donnelly of the same '799 patent charging other models of Donnelly mirrors, namely, *Gentex Corp. v. Donnelly Corp.*, 27 USPQ2d 1714, 1993 WL 186560 (W.D.Mich.1993) (holding the '799 patent not invalid and not unenforceable and awarding Gentex damages of two million dollars).

That suit involved mirror devices not involved here. Judgment was entered on a jury verdict and further infringement was enjoined. No appeal was taken. Donnelly had admitted that its devices infringed and defended on the grounds of invalidity and unenforceability of '799 patent.

In March of 1993, Donnelly brought out a new line of chemichromic mirrors in which it had changed the construction from those involved in the prior suit. Instead of using a color-changing liquid it used a solid film located in the same chamber where the liquid had been placed and operating in the same general way. On June 7, 1993 Gentex filed its complaint charging that the new mirrors infringed the '799 patent and alleging that they were "no more than colorably different from the ... mirrors ... adjudged to infringe" in the former suit, which is to say that they were not really different.

Donnelly then did two things: it filed a counterclaim for a declaratory judgment of noninfringement and invalidity and it filed a motion for summary judgment of noninfringement. The case comes to us from the trial court's decision on the motion, which was granted. The essence of Donnelly's position, which prevailed below, is simple: The claims of the '799 patent are limited to color-changing materials in the mirror which are in "solution-phase." The color-changing materials in the alleged infringing mirrors are solid films. Therefore, the claims cannot be read on the accused devices and there is no infringement. The trial court so held and we agree.

### ANALYSIS

The reported trial court opinion in support of its grant of summary judgment is so clear and thorough in its analysis that for the most part we shall simply assume familiarity with it. It was based on a considerable amount of evidence which included a supporting affidavit of Dr. Lynam, Donnelly's vice president of corporate research and development, the declaration of Dr. Byker, the inventor of the patent in suit, the declaration of Gentex's expert witness, Dr. Bard, who was a highly experienced and highly qualified professor of chemistry who had done some experimenting with the Donnelly mirror films, a deposition of Dr. Bard taken in this case, numerous physical and other exhibits, as well as the evidence taken in the prior litigation, not to mention the specification of the patent in suit which is very lengthy and informative. All of this in reality amounted to a trial of the issue of infringement raised by the motion for summary judgment of noninfringement. We do not see that Gentex has been deprived of an opportunity to establish at least a prima facie case.

Gentex's briefs make various attempts to persuade us that summary judgment was improper because of the existence of genuine issues of material fact requiring trial, as was also argued to the trial court, but in view of the above we agree with that court's rulings that there are no genuine issues of material fact precluding a summary judgment and requiring further trial. These rulings appear at various points in the opinion in connection with various contentions. The precedents of this court were properly applied in this respect. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577, 12 USPQ2d 1382, 1383 (Fed.Cir. 1989).

■ Getting to the merits, the sole issue is infringement. That requires an interpretation of the claims of the patent and a determination of whether they read on or cover Donnelly's new mirrors. More specifically, the issue is: Do the patent claims cover mirrors wherein the color-changing, electrochromic element is a solid film?

First, as to the patent. It contains 31 claims and it is to the claims we must look to determine infringement. It is plaintiff Gentex's burden to show that each limitation of the claims relied on is met. Only claims 1, 26, 30, and 31 are independent claims and hence the others contain the limitations of these claims. Each independent claim contains the same limitation that the mirror contains a variable light transmission component which is a "single-compartment, self-erasing, *solution-phase* electrochromic device." (Emphasis ours.) One cannot read the patent specification without observing that it is emphasized from beginning to end that it is limited to devices wherein the elec-

trochromic element is a *solution* which consists of a solvent in which are *dissolved* the compounds which change color when an electric current is applied to the solution, there possibly being two, an anodic compound and a cathodic compound. A key explanation at the beginning of the specification states:

> The solution is fluid during operation of the device, although it may be gelled or made highly viscous with a thickening agent. That the devices are "solution-phase" means that all of the components in the solution, including the anodic and cathodic compounds, remain in solution during operation of the device with the concomitant oxidation of anodic compounds and reduction of cathodic compounds [when the current is applied].

Col. 2, ln. 28–36.

■ It was the province of the trial judge to interpret the claims, as we have recently reiterated in *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.1995) (in banc). That he did. Words in claims are to be given their ordinary meaning in the absence of indication in the patent to the contrary. *Intellicall Inc. v. Phonometrics Inc.,* 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992). Claim interpretation is a question of law amenable to summary judgment. *Id.* Further, as the trial judge opinion shows, the inventor Dr. Byker testified that "solution-phase" was intended to mean that the electrochromic materials were *liquid,* that he did not intend to include solid film.

On the whole record, we agree with the holding of the trial court that the limitation of the claims to "solution-phase" encompasses only those devices where the electrochemical reactions occur entirely in a solution, as distinguished from a solid.

■ The claims being thus limited, the only question remaining is whether this limitation is met by Donnelly's new devices, at issue herein, wherein the electrochemichromic elements are in the form of solid films. The trial court said: "The Court finds as a matter of law that it is not." It is of course established that infringement of a patent claim is an issue of fact to be found by the fact finder, whether it be the court or a jury, where there is one. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.* 859 F.2d 878, 889, 8 USPQ2d 1468, 1477 (Fed. Cir.1988). The trial court summed up its primary reason for granting the summary judgment of noninfringement as follows:

> The Donnelly polychromic mirrors are not "solution-phase" as a matter of law. Accordingly, not all of the limitations of the '799 patent [claims] are found in the Donnelly polychromic mirror and Donnelly is entitled to a judgment of noninfringement.

. . . .

> The Court's determination that the Donnelly polychromic mirrors do not meet the "solution-phase" limitation of the '799 patent is a sufficient basis for a summary judgment of non-infringement.

*Gentex,* 31 USPQ2d at 1194. Where there is no genuine issue of fact created by the evidence on the issue of infringement, a court may, as the trial court held here, rule on the issue as a matter of law. Fed.R.Civ.P. 56(c).

We have carefully considered and weighed Gentex's various arguments in its main and reply briefs, that the accused devices function in the same way as the claimed devices and therefore must be solution-phase devices, that the Donnelly solid polymer films are in reality gels having two phases, solid and liquid, and therefore are "solution-phase," that soaking the solid films in solvent will extract electrochromic species ingredients therefrom, and that the patent teaches using gels made by using acrylic polymer thickeners similar to Donnelly's polymers. Viewing them in light of all the evidence of record, we find them all unconvincing,

For the foregoing reasons, the summary judgment of noninfringement is sustained.

*AFFIRMED.*